Please be seated. Your Honor, it's a final case in the morning. Call 2-4-9-2-7-0, Parker and Ulrich et al. v. The Patch Factory and Michael Welch. On behalf of the L1, Mr. Dave Krause. On behalf of the athlete, Kevin Buick. Mr. Krause, you may proceed. And please, the court, counsel. Morning, justices. My name is Dave Krause. I represent the defendants, the appellants in this case. Mr. Michael Welch is here as well in the courtroom, one of the defendants. This is a case where the trial court erred in a number of ways, but most fundamentally, the trial court precluded the defendants in this case from introducing clearly material and relevant evidence by granting two of the plaintiff's motions in limine. As a result, the jury really didn't hear the most important testimony in this case due to the trial court's error. We provided a fairly extensive offer of proof at the trial court level by actually calling witnesses, putting witnesses on the stand just as I would in the trial itself, and also by introducing, to the extent you can, an offer of proof and making a part of the record. The specific exhibits that I would have introduced as part of my case if I had been allowed to do it. And what I think makes it so damaging in this particular case is, at least as I look at the offer of proof and the documents, much of the, of our testimony that we sought to introduce was going to be undisputed or admitted. Much of the testimony of Mr. Parker on the offer of proof were admissions, such as he admitted that my clients exercised the offer, the purchase option on the property that he turned over the keys to my clients in May of 2004 and basically walked away and let my clients take care of the property. And I'll go into that in a little more detail as we go through, but I think that's what's damaging in this case. When you have things that are not disputed between the parties and the trial court precludes you from putting those on. And again, when they're clearly relevant material, that seems to be the issue. As a threshold question, as you know, the Forcible Entry and Detainer Act provides a summary procedure for determining the sole issue of possession. And that's essentially what the action is for, is for possession. Matters that are not germane to that issue is generally not considered to be related in the forcible issue or the forcible actions. So the question becomes, why are these other matters properly within the purview of a forcible entry and detainer action? Well, the answer to that question, I think, is in the Jack Sprigg case, where I think the court said whether rent is due is the decisive and crucial issue before the court. So is rent due the issue? And that is what all of my affirmative defenses went to and all of my counterclaims went to in this case. The issue of the fact that rent was not due for a number of reasons. In Jack Frost, it involved improvements. And in your case, the contract, the lease, provides what with respect to improvements? Well, I think with respect, whether you look at the issue of improvements or utilities and all those points, those were supposed to be handled by the lessor. And it was a situation where my client exercised the option to purchase the property, and then as of May of 2004, basically the lessor turned it all over to my client. As I read the agreements, the improvements were to be paid by the tenant. I think that's the case with respect to the improvements within the tenant's space. But the testimony, I think, on the offer of proof was that the improvement that my clients made were to common walls, common areas between various tenants' space. So it's a different situation there. I think that was the offer of proof testimony. Counsel, I think there might be another problem with the applicability of the Jack Spring case. I think Jack Spring fairly applied to a residential dwelling situation. This is a commercial lease. Later cases have noted distinction between residential and commercial leases and have refused to extend the holding of Jack Spring to a commercial lease. But I think the holding, the specific issue on Jack Spring was the implied issue of habitability. And again, we have in this case, or in the implied requirement that you maintain the property, in this case we have affirmative covenants by the lessor, not implied covenants. And that's why I think it is not, that those cases do not apply to this particular case. But most fundamentally, what we have here is a case where no rent was due at all. And that's because the defendants, through the offer of proof that we can see, admit that my clients went ahead and exercised the option to purchase. And that's when the cases of the Artful Dodger case, the City Services case, the Ellen Steele case, all those cases say that once the option to purchase is exercised, you are no longer in a landlord-tenant situation. You're in a vendor-vendee relationship. And at that point, you don't have to pay rent. It's up to the parties to go ahead with their sale of property. And in this case, again, I think the offer of proof shows that it's the landlord in this case who dragged his feet, who wouldn't sign it. Weren't these same issues, these equitable issues, also pending in the Chancery Division, separately from the Forstable case? That is an action which sought affirmative damages for their breach and lost profits relating to this property. But no, the same issues were not pending in the Chancery Division. Do we have an equitable claim for ownership of the property based on the improvements pending in the Chancery Division? I don't think the issues were the same in both of those cases. Counsel, was the installment contract ever executed? It was not executed. And it was not executed because, according to the offer of proof, my clients were ready to sign it, but the seller did not sign it. First, he said he wanted more time because he wanted the church lease to be signed first, and then after that, he didn't sign it. But the point, I think, even in all of these cases, whether it's industrial steel, our full dodger, or city services, I don't think in those cases it was ever signed either. It was a situation that once you exercise the option, the seller should not be able to thwart the deal by just sitting on his hands and refusing to sign it. At that point, they become vendor-vendee, and at that point, that governs their relationship no longer the lease. And the seller cannot then drag his feet, not sign the agreement, not fulfill his part of the bargain, and then come back to the tenant later on and say, whoops, you didn't pay the rent, all the while while he's breaching it. I think it goes to the fundamental issue, one of the fundamental issues in this case. We have cases where I think it's undisclosed. We have issues and testimony and evidence, whether offer proof or otherwise, that they constantly breach this lease. There's a requirement that my client has the right of first refusal with the adjoining property. I think the offer of proof shows that it's admitted that there was an offer, and it was never conveyed to my client. If Parker breached the lease, assuming for the sake of the argumento, you're accurate on that, did your client ever provide a written notice or any notice of the alleged breach, the alleged default? Did he ever do that? I think there was testimony that there were discussions that he was told that he should. I think my belief is because I think there was testimony that there were requests by my client to Parker to say, I'm ready to sign this land contract. Let's get it done. Did the lease provide that if there were any breaches by the owner of the property, that the notice of the breach had to be in writing? And if the owner did not respond, secure the breach within 15 days, the tenant had the right to vacate the property? I think that was the remedy. But that is an ineffective remedy in this particular case where my client negotiated an option to buy the property. And for the landlord to breach the lease and then tell my client, okay, your remedy is just go ahead and leave and don't pay anymore, that defeats the benefit of the bargain for my client. My client wanted to buy the property.  And I don't think we should allow a landlord to breach a lease and then choose a remedy which defeats the party's agreement and expectation. If the landlord did not want to sell to my client, they shouldn't have entered into the lease. Wasn't the option, the original option that was connected with the original lease and, in fact, originated before the lease was actually signed, wasn't there a failure to exercise that option? And then there was an extension agreement, and the extension agreement provided the right of your client to purchase the property under certain conditions. And your client did not comply with those conditions. Well, I think after the church became a tenant and your client received $100,000, the $100,000 was to be applied as a down payment on what was known, quote, unquote, as a contract. Right. Well, let me just address quickly, the $100,000 was not received by my client. The record shows that that was received and retained by the Parker plaintiffs in this case. But with respect to that issue, I think the evidence is undisputed that my client did exercise the option. I think the defendants even admit that fact. And when you look at the land contract, it had a closing date of May 5th of 2004. It was drafted by the Parker's counsel. So I don't understand how my opponents can claim that it wasn't exercised. It was exercised. They never would have asked their counsel to repair that. Did my opponent claim that at the time your client exercised the option, the option was void, had expired? I don't believe so because I think the testimony is that the option was exercised by my clients before the land contract was even drafted. And so they, I believe the land contract was drafted in, had a closing in May of 2004. The option, the pre-contract or so-called option, the purchase was, I don't remember anything in the record where at that time, before the lease was signed, your client exercised that option. No, I agree with that. What I'm saying is I believe the record shows that my clients exercised the option before the land contract was actually drafted by Mr. Parker's attorney. And so my position is if they felt that my client had not exercised the option, they never would have asked their attorney and they never would have asked or incurred the cost to have their attorney prepare it. I need the documentation. I don't think there's something to dispute the plaintiff's attorney did not prepare the contract, but the contract had expired before your client elected to exercise the option. Okay. No, I don't believe that's the case. I believe that the land contract called for a closing date, I think, on May 5th of 2004, and the testimony was, I think, that my client did ask to sign that contract and that the plaintiffs never did sign it. Now, with respect to any documents that were after that, subsequent issues, I want to address that because you raised that issue. I think you're right. I think that contract was prepared, but according to your point, never signed by your client. Well, the testimony from my client on the offer of proof was that he offered to sign it, he wanted to sign it, he asked the other side to sign it, and the other side wouldn't sign it. And on the issue of any subsequent documents, none of those documents were admitted in the offer of proof. There was no testimony on the offer of proof. They had the opportunity to raise those issues just like I did, and I don't think they're really before the court for that issue. Right. My memory is the court took the position that that particular issue was pending in the chancery court and should be decided in the chancery court, and the only issue before us and before the court was whether or not rent was paid. Correct. And that's what all my issues go to. For example, the issue of the church lease. It's undisputed that my client brought the church to the property. It's undisputed. If you look at, I believe it's offer of proof exhibit number five, the landlord says he's entitled to some of the rent, my client's entitled to about $4,000 or more than that. We could never argue that to the jury. Here they admit that my client's entitled to that over all those months. I wanted to argue to the jury that any rent that they claim is due, and I don't think any claim is due because of the exercise of the option in the Artful Dodger, et cetera, case, but I want to at least argue those issues and say, wait a minute, they admit that my client's due on a monthly basis $4,000 and $5,000. That should be a set-off against any amount that they claim is owed. We weren't allowed to argue that, nor we are allowed to argue, again, any of the improvements which were made not within the demise space but as the common areas. No argument was allowed on any of the issues of the rental we pay or the utilities, again, which the lease clearly says that they're responsible for the utilities, not us. I couldn't introduce testimony that they basically turned the property over to us, which is in the record. None of those things were allowed. And once I think so broad, I guess I can understand a motion to eliminate on a specific issue, on a specific witness, but when you do a motion to eliminate and grant it, where you basically tell the other side, all your defenses are gone, all your counterclaims are gone, that is the shotgun approach, which is clearly improper. In the cases I cited, I think I'm running out of time here, but the cases we cited, we clearly showed that it should be a surgical issue, not a shotgun issue, and you shouldn't just, and again, this was another case where if it was an issue, file a motion to dismiss, but this was a substitute for a motion to dismiss, and I do believe that it was error. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court. My name is Kevin Buick, and I represent Steve Parker and Randy Ulrich, under the land trust that was the landlord in this case. I would like to start by addressing what counsel alluded to both in his original brief and in his reply brief, which is an inaccurate statement of the standard of review with regard to motions eliminating. Counsel asserted that the standard of review is de novo, and it's not, plainly. The standard of review is abuse of discretion, which is apparent even by the cases that counsel relied on, the Reidelberger, the Cannon-Bradley cases that counsel relied on, in addition to the cases that we cited. Clearly, with regard to a motion eliminated in reviewing a trial court's determination on motion eliminate, the reviewing court must give that level of deference to the trial court in making those determinations. How do you submit that, or how do you argue that the order granting the motions eliminated, none of these issues that are set out in the motion, are relevant to the proceedings that were before the court? Your Honor, I... Do you want to go through them, A, B, C? I will. There are 11 points that are brought up in that motion, and collectively in both motions eliminated, 8 in the first and 3 in the second. And in each case, the trial court was reviewing and analyzing what was argued with regard to, first, the defendant's contention was that the unsigned contract gave them ownership of the property. That's simply not the law. The statute of frauds precludes the defendant from asserting that an unsigned contract can be a basis to enforce a real estate agreement. The second was he asserted that the option was exercised. It was not, contrary to what counsel was even arguing yet this morning, Your Honor. The record makes it clear, and this is Exhibit B to the first motion eliminated, that in 2005, the agreement, the extension agreement that Justice Holman alluded to, was executed by the parties. It makes it explicitly clear that there was no exercise of the option, but the parties, Mr. Welsh, who executed the agreement, acknowledges that in 2004, there was no exercise of the agreement. It set dates in March and in June of 2005 to give the defendant the opportunity to exercise the option, and he did not do so, and the record is very, very clear on that point. So with that issue, the option was never exercised, and that's what led to the situation where the defendant was paying rent, and that is what the trial was all about. There was, indeed, a pending Chancery case, 08-CH-464, that relates to some of the equitable issues that the defendant wants to argue. The trial court made a finding that he's free to make those arguments in that matter, but with regard to the forcible entry in container case, the possession issue that was before the jury, the only matters that can come in relate to that possession issue, and if I might, counsel alludes to the fact that he wasn't able to argue any defense. Well, in fact, he did. Mr. Welsh testified at the jury trial that his calculations, and this was raised for the first time at the jury trial, his calculations were that he should have been paying rent for the space that he was renting at an amount of $47.50 per month. Mr. Parker testified and showed by calculations in Exhibit 6 that was introduced that, in fact, the rent was $65.47 per month, and Mr. Parker then went through all of the unpaid months. I think there were 11 unpaid months in total where there was rent due and owing. Could you quickly respond to counsel's argument that the Jack Spring case provides authority, the proposition that affirmative defenses and the counterclaim can't come into this action? Well, Your Honor, first of all, I do believe that the Jack Spring case is limited to situations, explicitly limited to situations that involve residential real estate, and that case was weighing on the idea that there's a gross disparity between a landlord and the tenants in that circumstance that allowed the code provisions, the violations of the code provisions to become essentially an equitable defense. I think that in this situation, the equitable defenses that counsel wants to try to raise or wanted to try to introduce into this case, they must be closely related, closely connected, relevant, pertinent, and appropriate to the matter. Now, that's language from the Rosewood case. That's actually the Yuan Kang Ng case that we cited in response to Jack Spring that's quoting the Supreme Court's language in Rosewood, and I think here the trial court made an explicit finding that the types of matters that counsel and the defendant wanted to raise in that vein were not, that they were more prejudicial and probative, and I think that's very clear that it had that information, I'm an owner of the property. I approved the property in a situation where that improvement, the remedy for that improvement is explicitly set forth in the lease and involves simply termination of the lease on part of the defendant. Those matters were not properly before the court in the forceful entry and detainment trial where the plaintiff was seeking possession based on failure to pay rent through 2006 to 2008, and actually into 2009. I hope I've answered your question on that. Turning to some of the things that counsel was arguing, and I guess it does appear to me to be appropriate to note that counsel's making a lot about the shotgun analogy when it comes to motions in limine. The Iowa Supreme Court that was quoted by the Bradley Court talks about how motions in limine are not supposed to be used as a shotgun, they should be a rifle. What I would submit in response to Justice Shostak's question, a rifle is exactly what the plaintiff was using in this case, it may be a repeating rifle, but it was targeted, every single one of the 11 matters that are in there, if you analyze each of them independently, they don't belong in the forcible entry and detainment case. The set-offs, for example, for the utility charges of the janitorial services, which by the way had taken place in 2004 through 2006 and not in the period from October of 2006 through essentially January of 2009 when the defendant wasn't paying rent, those were the lease terms explicitly provided the remedy for the defendant, and the remedy was to terminate upon 15 days' notice the contract. Again, it also wasn't the right period of time. The contention that the defendant was an equitable owner of the property is specious. The cases make it very clear. The cases, again, even cited by counsel, make it very clear that in order to claim equitable ownership, you've got to have signed contract, and that isn't the case here. It never was the case. The defendant never owned the property. The defendant never took steps to execute ownership of that property. I think it is clear in the record that Mr. Parker would have been pleased to accept a sale. It never happened, and that is why in 2006, when the defendant began the process of paying monthly rent, when he stopped paying in March of 2008, the plaintiffs had no choice but to initiate a forceful entry and retainer action. That they did. The case went to the jury trial and trial court. In the exercise of its discretion, made very clear that the 11 matters that were the subject of that order to eliminate did not belong in the forceful case. With regard to the other points raised in the brief, Your Honors, one of the arguments made by the defendant is that the jury's verdict is against the manifest weight of the evidence because the plaintiffs didn't prove their case. And that, again, is contradicted by the fact that the plaintiffs, and the record is very clear on this, the plaintiffs proved that the defendants occupied the property as tenants under a lease. They proved that the defendants failed to pay rent due under the lease. There's an exhibit there. There were two NSF checks that were submitted. And then, you know, over a course of time, the defendants just simply did not pay the rent. And the plaintiffs gave, there was testimony in trial that the plaintiffs gave a 15-day notice that is required under the lease. The defendants failed to pay during the 15-day period. And the defendants continued to occupy the premises. All that is in there. All that is in the record, Your Honor. What's the expiration date of the original lease, 07? The original lease began in 2004 and was a three-year lease. And in March of 07, it did expire. But the testimony was, and Mr. Parker explicitly testified to this, and it is part of the record, that the parties simply continued on with the arrangement and with the terms of the lease. So the lease was going to sell for a year? Indeed. And it was by agreement of the parties. And it was shown by acquiescence. Now, there's one point that I would like to point out. Mr. Welsh, for whatever reason, paid $6,500 per month instead of $6,547. Mr. Parker chose to accept that. That leads to some disparity in the notices that were one of the exhibits at trial that counsel made much of. But the reality is that it's all in there. That $47 per month that was gapped out was not something that the plaintiffs pursued or made claim for. But they did incorporate that into their numbers when Mr. Welsh absolutely stopped paying the rent in March of 2008. The record seems to indicate at a time when the tenant's space became smaller and there was an adjustment to the rent, that there was a series of negotiations going on between the parties for quite a long period of time. And could you explain what those negotiations were? Did they relate to rent? Did they relate to the option? I can do the best I can, Your Honor. And, yes, they did relate to the option. And there was keen interest on the part of Mr. Parker to sell the property to Mr. Welsh. It didn't come to fruition. What happened with regard to the church did become a tenant. And when that occurred, Mr. Parker, and this is, again, about October of 2006, well into the lease agreement, recalculated the rent amounts because Mr. Welsh was not occupying the same amount of square footage that he was at the beginning of the lease. So the 6547, and that's Exhibit 6 that came into trial, the 6547 is some fairly painstaking calculations that Mr. Parker made regarding the modified space that Mr. Welsh was occupying at that time period and throughout the lease. That's what was relevant to the jury at the time of the trial because that's the basis for the rent amount. And, again, Mr. Welsh was paying all but $47 of it month after month after month. But then he stopped making those payments and, at that point, introduces for the first time, at the time of the forcible unattainment trial, an idea that, well, I should only have been paying $4,750 per month. And, therefore, because of that, I really actually owed some money. You know, the reality was that that was something that the jury considered. It did come in and it was analyzed. And I believe that the jury, considering Mr. Parker's testimony, the exhibits that were offered, the fact that it was clear that Mr. Welsh never bothered to tell Mr. Parker that he believed he should only have been paying $4,750 per month until the time of the forcible unattainment trial and all of the other weight of the evidence that came in became the reason why the jury believed Mr. Parker and not Mr. Welsh and found that there was, in fact, an arrearage due and owing and that possession was justified on that basis. The final point, Your Honor, I guess, involves the defendant's contention that the trial court erred in refusing to give defendant's jury instruction number four. And as the court's well aware, this is a non-pattern jury instruction, and so it must be a simple, non-argumentative, impartial statement of the law. It was not. It was an effort to insinuate an issue in trial court's judgment, we believe, where one didn't exist because what had happened is after the forcible entry and detainer case was filed, in August and September of 2008, there was a court order that was entered and Mr. Welsh made two months' worth of payments at that time on that particular, in that particular point, and the defendant wanted an instruction in trial saying that the payment of those amounts should not be construed as an admission. Now, the trial court analyzed this very carefully, and the trial court did admonish and instruct counsel for the plaintiff that they can't argue that it was an admission, and trial counsel abided by that. But the fact of the matter is that these amounts were not part of what was sought in terms of the arrears. They were not part of the trial, and it's simply not error for the failure to give that instruction. So with that, Your Honor, I'd ask if there are any other questions regarding the plaintiff's position. As I recall, the plaintiff dismissed his claim for rent and attorney fees as private proceedings. It did. Prior to beginning the jury trial in January, it did. And I think that the election that was made at that point in time is that possession was the issue, and when that election is made, plaintiffs calculated in the exercise of their trial discretion that they'd have an opportunity to show the jury that rent was due. And really, some of these issues, and this is indeed a somewhat convoluted, complicated case, which is why the motions in Luminae were so important, probably precluded the idea that it was necessary to seek re-judgment. Plus, there is a chancery case pending. There's an opportunity to resolve some of the monetary issues. The issue for this trial was simply the issue of possession. Thank you, Your Honors. Just to respond to some of counsel's points. With respect to the issue of the manifest way of the evidence, we did seek a directive verdict. We did file out seeking a motion. Standing the verdict, one of the fundamental points is that a plaintiff has to prove his case. In the least case, they have to prove what's owed. In this case, they were seeking amounts that were not specified in the lease. It's admitted, I think, by everyone that different space location, different space parameters, they did not. What's your response to the plaintiff's assertion that the option could not be exercised or at least be exercised in length? I don't believe there's any basis in the record for that. I don't think there's any provision in the document. What I understood counsel's position to be, the statute of frauds applied because they said we did not have a signed contract. But we didn't have a signed, we wouldn't have a signed contract, we would have a signed land contract. We didn't have a signed land contract because the plaintiff breached and refused to sign it. That's what I understood his point to be. And, again, he shouldn't be able to breach the contract and then say, well, you know, it's not signed by me, so statute of frauds, sorry that we lose on that basis. But that's my understanding with respect to that. And, again, I don't think there's any dispute that it was exercised because, again, I would just go back to defendant's offer of proof exhibit number one. Here's the land contract. If it wasn't exercised, why is the plaintiff's attorney preparing this document with a date of May of 04? Why is the plaintiff paying his attorney to do this document in May of 04? Again, I don't think there's any credible evidence that it was not exercised. On the issue of standard of review, in this case, I really think on the court's decision, the motion is eliminated. The court really decided, didn't really undergo a factual determination. The court said, look, these issues are not germane, and I think that's a matter of law. I do agree that ratio decada doesn't apply to the court's rulings on the motion eliminated. In a subsequent proceeding? For purposes of your chancer, dependent chancers. Well, I don't know. I assume my opponent would argue that in the future, so I don't want, you know, I would hope that they wouldn't, but I don't think there's any guarantee on that. And, again, my perspective is I'm hoping this case will be decided on the issue before you, not the chancer case that's not before you, and not the document, the subsequent document, which, again, there was no testimony on it. They didn't do any testimony on it, which they could have done on their offer of proof and didn't submit it. So I think that all those issues are really not appropriately in the record and not appropriately before you. On the issue of my client's testimony as far as what was paid and what was owed at the trial court, I think his testimony was if he owed anything, this was the maximum amount he owed. I don't think he ever testified that he actually owed rent because his position is that he was the vendee of the property after the exercise of the property. And, again, they go back to the issue of the remedy. Again, they want to breach the contract and then tell my client that, well, you could leave. And, again, in some simple cases, that may be an option. But when you want the property, when you negotiate an option to buy the property, then your opponent says, well, I breach, walk away, you lose the benefit of your bargain. And that's not an appropriate remedy in this type of a case. And, again, I think counsel mentioned that our claim that my client was the equitable owner of the property was unreasonable. Well, again, if you look at the industrial steel, the city services case, the powerful Dodger case, those are all cases which hold that. Those are cases where there was a signed document. Those are all cases where there was an exercise of an option, just like in this case. And in their brief, I don't recall them ever distinguishing those cases. So if those were not applicable, if my argument was specious, I would think they would at least mention the case. And if it was specious, at least or definitely distinguish those cases. What was the date that you received the purchase contract? Is it dated? The installment contract? It is dated. It's a date in May of 2004. It's dated May 1st of 2004. And I think the testimony was that my client told the plaintiffs that he was exercising the option to purchase the property in April of 2004. And that makes logical sense, given that then their attorney goes ahead and does this. What's the date the lease started? I believe that was in April. I'm sorry, no, that was April 2nd of 2004 is the date of the lease. Just briefly, as far as our request for relief, I think we would like the court to enter judgment in our favor on our directed verdict in motion. Notwithstanding the verdict, or alternatively, that the court grant a new trial based on the trial court there. The case is taken unadvised.